1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

YVONNE MARIE PARSLOW,                    NO.  C12-2269-MJP-JPD

9                          Plaintiff,

10        v.                                            REPORT AND
                                                        RECOMMENDATION
11    CAROLYN W. COLVIN, Acting
      Commissioner of Social Security,

12                          Defendant.

13

14        Plaintiff Yvonne Marie Parslow appeals the final decision of the Commissioner of the

15    Social Security Administration ("Commissioner") which denied her applications for

16    Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C.

17    §§ 1381-83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set

18    forth below, the Court recommends that the Commissioner's decision be AFFIRMED.

19                          I.        FACTS AND PROCEDURAL HISTORY

20        At the time of the administrative hearing, plaintiff was a thirty-one year old woman

21    with a tenth grade education.  Administrative Record ("AR") at 40-41.  Her past work

22    experience includes employment as a receptionist and hostess.  AR at 82.

23        On January 13, 2010, plaintiff filed a claim for SSI payments, alleging an onset date of

24    May 31, 2008.  AR at 37, 163-66.  During the administrative hearing, however, plaintiff

REPORT AND RECOMMENDATION - 1

1  amended her alleged onset date to January 13, 2010.  AR at 38.  Plaintiff asserts that she is

2  disabled due to schizoaffective disorder.  AR at 20.

3        The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 95-

4  98, 102-04.  Plaintiff requested a hearing, which took place on August 23, 2011.  AR at 32-92.

5  On October 7, 2011, the ALJ issued a decision finding plaintiff not disabled and denied

6  benefits based on her finding that plaintiff could perform a specific job existing in significant

7  numbers in the national economy.  AR at 18-31.  Plaintiff's request for review by the Appeals

8  Council was denied, AR at 1-5, making the ALJ's ruling the "final decision" of the

9  Commissioner as that term is defined by 42 U.S.C. § 405(g).  On December 28, 2012, plaintiff

10  timely filed the present action challenging the Commissioner's decision.  Dkt. 1.

11                          II.        JURISDICTION

12        Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

13  405(g) and 1383(c)(3).

14                          III.        STANDARD OF REVIEW

15        Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

16  social security benefits when the ALJ's findings are based on legal error or not supported by

17  substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

18  Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

19  such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

20  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

21  (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

22  medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

23  53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a

24  whole, it may neither reweigh the evidence nor substitute its judgment for that of the

Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Ms. Parslow bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

1   The Commissioner has established a five step sequential evaluation process for

2   determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§

3   404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At

4   step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at

5   any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step

6   one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R.

7   §§ 404.1520(b), 416.920(b).[1]  If she is, disability benefits are denied.  If she is not, the

8   Commissioner proceeds to step two.  At step two, the claimant must establish that she has one

9   or more medically severe impairments, or combination of impairments, that limit her physical

10  or mental ability to do basic work activities.  If the claimant does not have such impairments,

11  she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe

12  impairment, the Commissioner moves to step three to determine whether the impairment meets

13  or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d),

14  416.920(d).  A claimant whose impairment meets or equals one of the listings for the required

15  twelve-month duration requirement is disabled.  *Id.*

16      When the claimant's impairment neither meets nor equals one of the impairments listed

17  in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

18  residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

19  Commissioner evaluates the physical and mental demands of the claimant's past relevant work

20  to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If

21  the claimant is able to perform her past relevant work, she is not disabled; if the opposite is

22  _____

23      [1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. §

24  404.1572.

true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.   DECISION BELOW

On October 7, 2011, the ALJ issued a decision finding the following:

1. The claimant has not engaged in substantial gainful activity since January 13, 2010, the application date.

2. The claimant has the following severe impairments: schizoaffective disorder.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She can understand, remember, and carry out simple, repetitive tasks. She can follow simple instructions, concentrate for short periods, and make simple, work related decisions.

5. The claimant is unable to perform any past relevant work.

6. The claimant was born on XXXXX, 1980 and was 29 years old, which is defined as a younger individual age 18-49, on the date the application was filed.[2]

7. The claimant has a limited education and is able to communicate in English.

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 5

9.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10.   The claimant has not been under a disability, as defined in the Social Security Act, since January 13, 2010, the date the application was filed.

AR at 20-27.

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1.   Did the ALJ err in evaluating the medical opinion of Dr. Pastor?

2.   Did the ALJ err in evaluating plaintiff's GAF scores?

Dkt. 13 at 1; Dkt. 17 at 2.

## VII.   DISCUSSION

A.   The ALJ Did Not Err in Evaluating Dr. Pastor's Medical Opinion

1.   *Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988).  "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

1   making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than

2   merely state his/her conclusions. "He must set forth his own interpretations and explain why

3   they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22

4   (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence.

5   *Reddick*, 157 F.3d at 725.

6          The opinions of examining physicians are to be given more weight than non-examining

7   physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the

8   uncontradicted opinions of examining physicians may not be rejected without clear and

9   convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining

10  physician only by providing specific and legitimate reasons that are supported by the record.

11  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

12         Opinions from non-examining medical sources are to be given less weight than treating

13  or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the

14  opinions from such sources and may not simply ignore them. In other words, an ALJ must

15  evaluate the opinion of a non-examining source and explain the weight given to it. Social

16  Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives

17  more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a

18  non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

19  consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947,

20  957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

21                      2.      *Claire Pastor, M.D.*

22         Claire Pastor, M.D., has been plaintiff's treating psychiatrist at Compass Health since

23  approximately March 2011. AR at 406. On August 19, 2011, Dr. Pastor provided the

24  following medical opinion:

1
2
3
4

> I am the psychiatrist who has been treating [Ms.] Parslow since about 3/11. [Ms. Parslow] is diagnosed with Schizoaffective d/o – bipolar type which is a chronic illness. She continues with severe symptoms of auditory hallucinations, ideas of reference, pressured speech, and disorganized thinking. I believe that her illness prevents her from working and that she will require medications and mental health treatment long term. Please call with questions.

AR at 406.

5
6
7
8
9
10

The ALJ gave "less weight to the medical opinion of treating physician, Claire Pastor, M.D., who concluded that the claimant could not work due [to] her mental symptoms. Although treating physician opinions are usually afforded more weight, I give less weight in this case because Dr. Pastor does not indicate any specific functional limitations." AR at 25. "Moreover, as discussed above, the claimant's most significant limitations are associated with her failure to follow prescribed treatment." AR at 25.

11
12
13
14
15
16
17

Plaintiff contends that the ALJ's two stated reasons "are not a sufficient basis for discounting Dr. Pastor's opinion. First, the most reasonable way to interpret Dr. Pastor's opinion is that Dr. Pastor did not set forth 'specific functional limitations' in her letter because she was of the opinion that the severity of the symptoms prevented the claimant from working in any capacity regardless of the demands of the job." Dkt. 13 at 3. Plaintiff further asserts that "Dr. Pastor would be aware of the variation of the claimant's symptoms [during] periods when she was not on medication." *Id.*

18
19
20
21
22
23

As a threshold matter, the Commissioner points out that the ALJ gave significant weight to the opinions of medical expert Scott Mabee, Ph.D., who testified at the hearing, and to part of the opinions of non-examining state agency consultants Carla van Dam, Ph.D., and Matthew Comrie, Psy.D. Dkt. 17 at 3 (citing AR at 25). Thus, the Commissioner asserts that Dr. Pastor's opinion is contradicted by other evidence in the record, including the opinions of

24

1   Drs. Mabee, van Dam, and Comrie, and therefore the ALJ need only provide specific and

2   legitimate reasons to reject her opinion.  *Id*. at 4 (citing *Tonapetyan*, 242 F.3d at 1148).

3       The Commissioner contends that the ALJ's two reasons for discounting Dr. Pastor's

4   opinion were specific and legitimate.  The Commissioner contends that an ALJ may properly

5   reject a conclusory opinion that fails to provide "a specific assessment of . . . functional

6   capacity."  *Id*. at 6 (citing *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)).  In

7   addition, the Commissioner argues that the ALJ reasonably found that Dr. Pastor's opinion was

8   inconsistent with the record, as plaintiff's most significant limitations are associated with her

9   failure to follow prescribed treatment.  The Commissioner asserts that the record supported the

10  ALJ's finding that she was "doing well" when taking her medications, (AR at 23, 318, 338-39,

11  384-85, 390-93,) and experienced hallucinations when she stopped taking her medications (AR

12  at 23-24, 388-89, 400, 413, 416).  As "Dr. Pastor's opinion does not reflect any consideration

13  that her symptoms subside when she takes medications," the Commissioner argues that this

14  inconsistency is a specific and legitimate reason for the ALJ to discount Dr. Pastor's opinion.

15  Dkt. 17 at 6.

16      Plaintiff replies that Dr. Pastor "specifically cited 'auditory hallucinations, ideas of

17  reference, pressured speech, and disorganized thinking' as severe symptoms. They are

18  symptoms, but also clearly functional limitations."  Dkt. 18 at 2 (citing AR at 407).  Finally,

19  plaintiff reiterates that "as treating psychiatrist Dr. Pastor [would] have been aware of the

20  plaintiff's history of going on and off medications so that fact should not be an issue."  *Id*.

21      The Court agrees with the Commissioner that the ALJ properly cited two specific and

22  legitimate reasons for discounting Dr. Pastor's conclusory opinion.  First, the ALJ reasonably

23  found that Dr. Pastor's opinion failed to identify any specific functional limitations.

24

REPORT AND RECOMMENDATION - 9

1    AR at 25.  Rather, Dr. Pastor identified several symptoms of plaintiff's schizoaffective

2    disorder, without explaining how these symptoms translated into functional limitations that

3    would preclude work.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir.

4    1999) (providing that an ALJ may reject an opinion that does "not show how [a claimant's]

5    symptoms translate into specific functional deficits which preclude work activity."); *Meanel v.*

6    *Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (stating that an ALJ properly rejected a medical

7    opinion that failed to explain the extent or significant of a condition); 20 C.F.R. §

8    416.927(d)(1) (providing that "a statement by a medical source that [a claimant is] 'disabled'

9    or 'unable to work' does not mean . . . [the claimant is] disabled.").  Moreover, Dr. Pastor's

10   opinion that plaintiff is unable to work is not entitled to controlling weight.  *See* SSR 96-5p

11   (providing that "treating source opinions on issues that are reserved to the Commissioner are

12   never entitled to controlling weight or special significance.").

13          Second, the ALJ asserted that plaintiff's "most significant limitations are associated

14   with her failure to follow prescribed treatment."  AR at 25.  As the Commissioner argues, Dr.

15   Pastor's brief, conclusory opinion does not reflect any consideration of the fact that plaintiff's

16   severe symptoms subside when she complies with treatment and takes her prescribed

17   medications.  As the ALJ discussed at length in her written decision, AR at 23-24, the record

18   reflects that plaintiff's symptoms improve dramatically when she takes her prescribed

19   medications.  AR at 23, 318, 338-39, 384-85, 390-93.  Similarly, her symptoms worsen

20   whenever she stops taking her medications.  AR at 23-24, 388-89, 400, 413, 416.  In this

21   context, Dr. Pastor's failure to acknowledge plaintiff's drastic improvement when she

22   complied with treatment was a specific and legitimate reason for the ALJ to reject her opinion.

23   The ALJ's reasons for discounting Dr. Pastor's opinion are supported by substantial evidence.

24

REPORT AND RECOMMENDATION - 10

1

B.      The ALJ Did Not Err in Evaluating Plaintiff's GAF Scores

2      The ALJ gave "little weight to the GAF scores in the record.  The scores are largely

3    predicated on subjective reports and reflect few specific functional limitations because they

4    include consideration of multiple factors not correlated to impairment related occupational

5    difficulties."  AR at 25.  In addition, the ALJ asserted that "the lowest scores of record are

6    associated with periods of increased symptoms precipitated by the claimant's poor compliance

7    with treatment."  AR at 25.

8      Plaintiff argues that "the Compass Health mental health treatment records do contain

9    functional assessments in the form of three GAF scores.  An assessment on January 11, 2010

10   was scored as 46 . . . an assessment on March 3, 2011 was scored as a 40 . . . and an

11   assessment on August 2, 2011 was scored as 40."  Dkt. 13 at 3 (citing AR at 415, 417, 422).

12   Plaintiff asserts that "these are all scores correspond (sic) to serious levels of occupational

13   function.  Scores between 41 and 50 equal 'unable to keep a job' and a score of 40 equals

14   'unable to work.'"  *Id*. (citing AR at 248).  Plaintiff asserts that "although there were times

15   when she was better when on medication, and worse when not, these GAF scores cover the

16   period of time between the date the date of alleged onset, January 13, 2010, and the date of the

17   hearing, August 23, 2011."  *Id*.

18      The Commissioner responds that the ALJ provided valid reasons for discounting the

19   GAF scores in the record, of which there are actually five, spanning from January 2008 to

20   August 2011.  Dkt. 17 at 7.  Specifically, plaintiff's highest GAF score was 55 in June 2008,

21   and her lowest GAF score was 22 in February 2010.  AR at 251, 292.  Plaintiff's most recent

22   GAF scores in March and August 2011 were 40.  AR at 400, 415, 417. The Commissioner

23   argues that the ALJ validly rejected these scores because they included considerations of

24   multiple factors not necessarily correlated to impairment related occupational difficulties, as

1    "the GAF scale has two components: the first part covers symptom severity, and the second

2    part covers functioning."  AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL

3    MANUAL OF MENTAL DISORDERS 32 (4th ed. 2000).  "Functioning" refers to social and

4    occupational functioning, which can include having no job, being unable to work because of a

5    mental condition, or having conflicts with coworkers.  *Id.* at 33.  "The final GAF always

6    reflects the worse" of symptoms or functioning, but there is no indication as to which it

7    reflects.  *Id.*  Thus, the Commissioner asserts that "the GAF scale does not directly correlate to

8    the severity requirements of potentially disabling mental impairments."  Dkt. 17 at 7.

9         Second, the Commissioner asserts that the ALJ reasonably concluded that the lowest

10   GAF scores of record were associated with periods of increased symptoms precipitated by

11   plaintiff's poor compliance with treatment.  *Id.* at 8 (citing AR at 25).  For example, plaintiff's

12   lowest GAF score in February 2010 corresponds with the period of time when she was

13   admitted for inpatient psychiatric care after being off medications.  AR at 21, 292.  Once she

14   was stabilized on medication, her GAF score rose until she again stopped taking her prescribed

15   medication in March 2011.  AR at 400, 417 (noting that "she describes basically being off

16   meds at this time" and that she "presents today with significant psychotic symptoms").

17        The Commissioner is correct. The GAF Scale provides a measure for an individual's

18   overall level of psychological, social, and occupational functioning.  AMERICAN PSYCHIATRIC

19   ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000).

20   The Scale "may be particularly useful in tracking the clinical progress of individuals in global

21   terms, using a single measure." *Id.* at 30.  A GAF range of 41–50 reflects "[s]erious symptoms

22   (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious

23   impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a

24   job)." *Id.* at 32.  A GAF score of 31-40 indicates "some impairment in reality testing and

REPORT AND RECOMMENDATION - 12

1    communication" or "major impairment in several areas, such as work or school, family

2    relations, judgment, thinking or mood."  A GAF score of 21-30 indicates "behavior is

3    considerably influenced by delusions or hallucinations" or "serious impairment in

4    communications or judgment" or "inability to function in all areas."  *Id.*

5         Despite its usefulness as a tool for psychological assessment, however, a GAF score is

6    not determinative of mental disability or limitation for social security purposes.  *See*

7    *McFarland v. Astrue*, 288 Fed. Appx. 357, 359 (9th Cir. 2008) (citing 65 Fed. Reg. 50746,

8    50764–50765) (Aug. 21, 2000) ("The GAF score does not have a direct correlation to the

9    severity requirements in our mental disorders listings.").  In evaluating the severity of a

10   claimant's mental impairments, a GAF score may help guide an ALJ's determination, but an

11   ALJ is not bound to consider it.  *See McFarland,* 288 Fed. Appx. at 359 (ALJ did not commit

12   error by failing to mention the plaintiff's three GAF scores of 50); *Orellana v. Astrue,* 2008

13   WL 398834, at *9 (E.D. Cal. Feb.12, 2008) ("While a GAF score may help the ALJ assess a

14   claimant's ability to work, it is not essential and the ALJ's failure to rely on the GAF does not

15   constitute an improper application of the law.").

16        Thus, the ALJ was not even required to discuss plaintiff's GAF scores, let alone assign

17   them controlling weight in assessing the severity of plaintiff's mental health symptoms.   In

18   any event, the Court agrees with the Commissioner that the ALJ in this case identified valid

19   reasons for discounting plaintiff's GAF scores.  The Court cannot agree with the plaintiff that

20   the ALJ committed harmful error by failing to assign these GAF scores controlling weight.

21        The role of this Court is limited.  As noted above, the ALJ is responsible for

22   determining credibility, resolving conflicts in medical testimony, and resolving any other

23   ambiguities that might exist. *Andrews*, 53 F.3d at 1039.  When the evidence is susceptible to

24   more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.

REPORT AND RECOMMENDATION - 13

1    *Thomas,* 278 F.3d at 954.  While it may be possible to evaluate the evidence as plaintiff

2    suggests, it is not possible to conclude that plaintiff's interpretation is the only rational

3    interpretation.

                           VIII.   CONCLUSION

5          For the foregoing reasons, the Court recommends that the final decision of the

6    Commissioner be AFFIRMED.  A proposed order accompanies this Report and

7    Recommendation.

8          DATED this 22nd day of October, 2013.

10                                          _____
                                            JAMES P. DONOHUE
11                                          United States Magistrate Judge

REPORT AND RECOMMENDATION - 14